IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

FISHER WIRELINE SERVICE, INC., )
)
        Plaintiff, )
)   Case No. 15-CV-627-JED-FHM
v. )
)
TUCKER ENERGY SERVICES, INC., et al., )
)
        Defendants. )

**OPINION AND ORDER**

**I.    Prior Order**

The Court previously dismissed the plaintiff's claims in this case, but granted plaintiff leave to file an amended complaint on certain of its claims. (Doc. 26). Plaintiff then filed its First Amended Complaint, reasserting its breach of contract and interference with contractual relations claims. (Doc. 27). The defendants again move for dismissal. (Doc. 28).

**II.    Dismissal Standard**

As before, the Court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss is properly granted when the pleading provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading of a claim must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). A court must accept all the well-pleaded allegations as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *Twombly*, 550 U.S. at 555. However, "conclusory allegations without supporting factual averments are insufficient to

state a claim upon which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quotation omitted).[1]

### III.  Discussion

#### A.   Breach of Contract Claims

Both parties agree that the First Amended Complaint references contracts which are central to the plaintiff's claims, and the parties do not dispute the authenticity of those contracts. The Court may thus consider those agreements. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (on a dismissal motion, the court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (citations omitted). The plaintiff and defendants have provided the Non-Competition Agreement (NCA) (Doc. 28-1, 29-1), related Equipment Lease (Doc. 28-2, 29-3) and Bill of Sale (Doc. 28-3, 29-3), and those documents are central to plaintiff's claims in the First Amended Complaint. Plaintiff has also provided what it represents to be a printout from the State of Kansas supporting plaintiff's inclusion of the defendants with "Tucker" in their name as successors in interest to the contracting party, Davis Great Guns Logging, Inc. (Davis), by name change. (*See* Doc. 29-2).

The First Amended Complaint contains claims for breach of the NCA and tortious interference with contractual relations. Plaintiff and defendant Davis entered into the NCA and

---

[1] In its response brief, plaintiff asks the Court to apply a dismissal standard that is no longer applicable in federal court. (Doc. 29 at 2-3, citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) and *Indiana Nat'l Bank v. State Dep't of Human Servs.*, 880 P.2d 371, 375 (Okla. 1994)). The cases cited by plaintiff rely upon *Conley v. Gibson*, 355 U.S. 41 (1957), which rendered dismissal for failure to state a claim improper unless it appeared "beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. That standard has not applied in federal court for almost a decade. *See Twombly*, 550 U.S. at 555.

related Bill of Sale and Equipment Lease in August 1992. In connection with those agreements, plaintiff alleged that it purchased the goodwill of Davis's business, tools and protected territory. (Doc. 27 at 2). Plaintiff also alleges that it entered into an agreement with Davis whereby Davis agreed to repair tools it sold to plaintiff. (*Id.*). No party has provided a written contract relating to the alleged agreement to repair tools, and plaintiff's allegations indicate that the repair agreement was made after the NCA and related documents were signed, such that it appears that the agreement was oral. (*See id.* at 3). As part of the plaintiff's purchase of the goodwill of Davis's business, the parties to the NCA agreed that Davis would not operate or solicit customers in the protected territory. (*Id.* at 2). [2]

For its breach of contract claim, plaintiff avers that the "Defendants honored the [NCA] until 2006, and from 2006 to present Defendants have solicited and serviced the customers of Plaintiff and have invaded the protected territory of Plaintiff and continue to solicit and service Plaintiff's customers in direct violation of the contract . . . in Creek County and other Oklahoma counties." (*Id.* at 3). The plaintiff expressly alleges that the NCA is a lawful restraint on trade pursuant to *Okla. Stat.* tit. 15, 218. As to the breach of the tool repair agreement, plaintiff alleges that the defendants "have failed and have refused to make the necessary repairs since 2012," which has caused plaintiff's business to sustain damages. (*Id.*). For its tortious interference claim, plaintiff asserts that the defendants have "interfered with Plaintiff's contractual relations by

---

[2] Following a cursory review of the NCA, it appears doubtful that the geographic scope of the NCA complies with the limitations set forth in Oklahoma law. *Compare Okla. Stat.* tit. 15, § 218 *with* Doc. 28-1). However, if the NCA is otherwise valid (which is a premature question at this stage), Oklahoma law may permit judicial modification of the NCA's territorial restrictions to comply with the geographic scope of the statute. *See generally Hartman v. Everett*, 12 P.2d 543, 544 (Okla. 1932); *Eakle v. Grinnell Corp.*, 272 F. Supp. 2d 1304, 1311-12 (E.D. Okla. 2003).

contacting and contracting with Plaintiff's customers within and around Plaintiff's protected territory from 2006 to present." (*Id.* at 4).

In arguing for dismissal, defendants first assert that plaintiff's claims are barred by the applicable statutes of limitations. Plaintiff did not file this action until June 30, 2015, but expressly alleges in the First Amended Complaint that the defendants: (1) breached the NCA in 2006 by competing with and soliciting customers of plaintiff; (2) breached the oral agreement to make tool repairs in 2012; and (3) tortiously interfered with contracts beginning in 2006. (*See id.* at 2-4). The applicable Oklahoma statutes of limitations are five years for the breach of a written contract, three years upon a contract that is not in writing, and two years upon tortious interference with contractual relations. *Okla. Stat.* tit. 12, 95(1), (2), (3).[3]

Plaintiff does not dispute that claims based on breaches in 2006 would be time-barred, but suggests that continuing damages from earlier breaches would give rise to new claims that are not time-barred. Plaintiff also asserts that "[d]iscovery of various companies' records in this matter is crucial" and that such discovery will establish the breaches, the dates of such breaches, and will identify the customers. (Doc. 29 at 4, 11). However, it is now well-settled that Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see, e.g., Mecca v. U.S.*, 389 F. App'x 775, 782 (10th Cir. 2010) (unpublished) ("[The plaintiff] asserts he could show defendants' culpability with

---

[3] The parties appear to agree that, in this diversity case, Oklahoma law applies to the issues presented. In addition, the Equipment Lease agreement to which the NCA is "ancillary" provides that "[t]his lease and agreement shall be deemed to have been executed and entered into in the State of Oklahoma and shall be construed, enforced and performed in accordance with the laws thereof." (Doc. 28-2; *see also* NCA, Doc. 28-1 ["This Agreement is specifically ancillary to the Lease and Bill of Sale."]).

4

discovery, but '[Rule] 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'").

With respect to the alleged breaches of the NCA, plaintiff has alleged breaches in 2006, which would plainly be time-barred under the applicable five-year statute of limitations. Plaintiff has not alleged a breach by any defendant's initiation of competitive conduct with any particular customer in the protected area within the five-year period preceding the filing of the lawsuit. As a result, plaintiff has not alleged any facts that would plausibly state a breach of contract claim. Plaintiff's claim for breach of the NCA will be dismissed without prejudice, giving plaintiff one last opportunity to attempt to state a timely claim for breach of the NCA.

As noted, a three-year statute of limitations applies to any breach of the alleged oral tool repair agreement. Plaintiff has alleged that the agreement was breached beginning in 2012. Because this case was filed on June 30, 2015, plaintiff has stated a claim for any breach of that agreement within three years preceding the filing date, or which occurred on or after June 30, 2012. Accordingly, the motion to dismiss the claim for breach of the tool repair agreement is denied.

      **B.**      **Tortious Interference Claim**

A claim for tortious interference is subject to a two-year statute of limitations. *Okla. Stat. tit. 12, § 95(3)*; *Metro Oil Co., Inc. v. Sun Refining & Mktg. Co.*, 936 F.2d 501, 504 (10th Cir. 1991). Plaintiff alleges that defendants wrongfully interfered with plaintiff's contractual relations "from 2006 to the present." (Doc. 27 at 4, ¶ 23; *see also* Doc. 29 at 5). Based on that description, any claim for tortious interference with contract should have been brought within two years of the date of interference in 2006, but plaintiff did not file this action until 2015.

In response briefing, plaintiff argues that the tortious interference claim is timely because the defendants' actions "have continued to damage [plaintiff]." (Doc. 29 at 5). However, under

Oklahoma law, a claim for tortious interference accrues at the time of the tortious act, not the date of resulting damage. *See Metro Oil Co.*, 936 F.2d at 504 ("Metro argues the statute of limitations did not commence until April 1988—the date when it actually suffered damages. Oklahoma law fails to support Metro's contention. Under Oklahoma case law, a cause of action accrues upon the date of the tortious act, or the happening of the breach, and not the date of the resulting damage."). Accordingly, any claim based upon an act or acts of tortious interference completed before June 30, 2013 is time-barred. Plaintiff's claim for tortious interference with contractual relations is dismissed without prejudice, with one last opportunity to attempt to state a timely claim for tortious interference.

### C. Proper Defendants

Defendants Tucker Energy Services, Inc., Tucker Technologies, Inc., and Tucker Wireline Services, Inc. seek dismissal of the claims against them because they were not parties to the agreements between Davis Great Guns Logging, Inc. (Davis) and plaintiff. Plaintiff attaches a document from the Kansas Secretary of State and asserts that all of the defendants with "Tucker" in their names are "simply entity name changes, and are controlled by Davis or wholly bought out by Davis." (Doc. 29 at 7). The document reflects that Tucker Energy Services, Inc. is the "current entity name" of a company with the previous name of Davis Great Guns Logging, Inc. (Doc. 29-2). However, neither Tucker Technologies, Inc. nor Tucker Wireline Services, Inc. are identified as successors to Davis, and those two entities will accordingly be dismissed from this action.

### IV. Conclusion

The defendants' Motion to Dismiss First Amended Complaint (Doc. 28) is **granted in part and denied in part**. The motion to dismiss plaintiff's claim for breach of an alleged tool repair agreement is denied, as the face of the First Amended Complaint does not establish that such a

claim is definitely time-barred. The motion is granted to the extent that plaintiff's claims for breach of the Non-Competition Agreement and for tortious interference with contractual relations are dismissed, without prejudice. Plaintiff may file a Second Amended Complaint **within 14 days** of the filing of this Order. Defendants Tucker Technologies, Inc. and Tucker Wireline Services, Inc. are dismissed from this action, as the plaintiff has failed to provide any plausible basis for maintaining any claim against either of them.

    SO ORDERED this 19th day of January, 2017.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE